**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| **INVITROGEN CORPORATION**<br>**(formerly Life Technologies, Inc.),**<br>**Plaintiff/Declaratory-Defendant,**<br><br>**vs.**<br><br>**CLONTECH LABORATORIES, INC.,**<br>**Defendant/Declaratory-Plaintiff.** | **Civil Action No.  AW-96-4080**<br>**AW-00-1879** |

## MEMORANDUM OPINION

Currently pending before the Court is a Motion for Partial Summary Judgment (Paper No. 912) filed by Defendant Clontech Laboratories, Inc. ("Clontech").  In its Motion, Clontech seeks partial summary judgment of non-infringement based on estoppel and patent unenforceability due to misuse.  Clontech further seeks partial summary judgment that Clontech is not a willful infringer, or in the alternative, a separate bench trial on the willfulness issue.  The Court has reviewed the entire record, including the pleadings with respect to the instant motion, previous Orders of this Court, as well as the relevant opinions of the United States Court of Appeals for the Federal Circuit ("CAFC").  Because the record is well developed and adequately addresses the various issues before the Court, a hearing on the Motion will not be necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated more fully below, the Court will grant-in-part and deny-in-part Clontech's Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

This consolidated patent infringement and declaratory judgment actions involves several patents owned by Plaintiff Invitrogen Corporation ("Invitrogen"): United States Patent Number 5,244,797 (the '797 patent); United States Patent Number 5,668,005 (the '005 patent); and United

States Patent Number 6,063,608 (the '608 patent), (collectively, "the patents-in-suit"). The patents-in-suit arise from a common parent application and are identically entitled "Cloned Genes Encoding Reverse Transcriptase Lacking RNase H Activity." The patents-in-suit describe and claim a certain mutant reverse transcriptase enzyme that has DNA polymerase activity and substantially no RNase H activity. Such an enzyme allows for RNA molecules to be copied into complementary DNA ("cDNA") without on-going degradation of the RNA molecule during the polymerization of the cDNA.

On December 31, 1996, Invitrogen instituted the present action against Clontech for infringement of the '797 patent and later added allegations of infringement of the '005 patent. Invitrogen alleges that Clontech infringed the '797 and '005 patents by making, using, or selling RNase H minus reverse transcriptase enzymes via the products SuperScript$^{TM}$ and SuperScript$^{TM}$ II. On December 22, 1998, Clontech instituted an action in the United States District Court for the District of Delaware against Invitrogen alleging that pursuant to 35 U.S.C. § 292, Invitrogen used the patent number of the '797 patent in connection with the sale of SuperScript$^{TM}$ and SuperScript$^{TM}$ II enzymes in order to deceive the public. On May 16, 2000, the '608 patent issued to Invitrogen. Clontech then filed a complaint in this Court for declaratory judgment of noninfringement of the '608 patent on June 22, 2000. Invitrogen in turn counterclaimed for infringement of the '608 patent based upon Clontech's use of a different reverse transcriptase enzyme, the PowerScript$^{TM}$ enzyme. Subsequently, this Court consolidated Invitrogen's infringement action and Clontech's declaratory judgment action.

On May 20, 2003, Judge Sue L. Robinson held in the Delaware case that the RNase activity of the SuperScript$^{TM}$ and SuperScript$^{TM}$ II enzymes was outside the scope of the "substantially no RNase activity" limitation of the '797 and '005 patents. *See Clontech Laboratories, Inc. v.*

*Invitrogen Corp.*, 263 F. Supp. 2d 780, 790 (D. Del. 2003) (the "Delaware decision").  Judge

Robinson also held that Invitrogen had falsely marked its products with the patents-in-suit.  *Id.* at

793.  Invitrogen filed a notice of appeal of Judge Robinson's Order on June 12, 2003.  While that

appeal was pending, Clontech moved this Court for an order affording collateral estoppel effect to

the Delaware decision, thereby precluding Invitrogen from asserting any claims of infringement as

to the patents-in-suit (Paper No. 755).  Invitrogen initially opposed Clontech's motion (Paper No.

761), but subsequently withdrew its opposition (Paper No. 772).

On September 2, 2003, the Special Master recommended that the Court grant collateral

estoppel effect to the Delaware decision (Paper No. 824).  At a pretrial conference and motions

hearing held on September 15, 2003, the Court orally decided that collateral estoppel would apply

to the findings of the Delaware Court.  *See* Tr. of Pre-Trial Conference and Motions Hr'g 3:13-4:4,

Sept. 15, 2003.  In light of the Court's ruling, the parties consented to the entry of final judgment.

Invitrogen noted an appeal of that final judgment on October 7, 2003.  Subsequently, on November

10, 2003, this Court issued an Order granting, *inter alia*, Clontech's request for the application of

collateral estoppel to the findings in the Delaware case (Paper No. 873).  Invitrogen did not appeal

this Court's application of collateral estoppel to the Delaware findings.

On May 5, 2005, the CAFC issued an opinion reversing Judge Robinson's finding that

Invitrogen had falsely marked its products, but expressly declined to offer an opinion as to whether

the products were in fact covered by the patents-in-suit.  *See Clontech Laboratories, Inc. v.

Invitrogen Corp.*, 406 F.3d 1347, 1358 (Fed. Cir. 2005) (the "Delaware appeal").  Several months

later, the CAFC issued an opinion on the appeal of this case affirming this Court's partial summary

judgment that the claims of the patents-in-suit are enabled, that the claims of the patents-in-suit

satisfy the written description requirement and summary judgment of literal infringement of the '608

patent.  The CAFC also vacated the Court's partial summary judgment of invalidity and remanded

the action back to this Court to address the narrow issue of whether the alleged prior inventors

sufficiently appreciated the invention to constitute conception prior to Invitrogen's conception and

reduction and practice.  *See Invitrogen Corporation v. Clontech Laboratories, Inc.*, 429 F.3d 1052,

1057 (Fed. Cir. 2005).  The CAFC did not address nor was the CAFC presented with the issue of

collateral estoppel on the appeal of this case.

In light of the CAFC's opinions, Invitrogen reasserted its claims against Clontech for

infringement of the patents-in-suit.  In response, Clontech filed the instant motion requesting

summary judgment of non-infringement based on estoppel and patent unenforceability due to

misuse, as well as summary judgment that Clontech is not a willful infringer, or in the alternative,

a separate bench trial on the willfulness issue.

## STANDARD OF REVIEW

Summary judgment is only appropriate if there are no genuine issues of material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v.

Catrett*, 477 U.S. 317, 323-25 (1986).  In a motion for summary judgment, the moving party

discharges its burden by showing an absence of evidence to support the nonmoving party's case.

*Celotex*, 477 U.S. at 325.  The court must "draw all justifiable inferences in favor of the nonmoving

party, including questions of credibility and of the weight to be accorded to particular evidence."

*Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted).  However,

the party who bears the burden of persuasion on a particular claim must present legally sufficient

evidence to support each element of his claim.  "[A] complete failure of proof concerning an

essential element . . . necessarily renders all other facts immaterial."  To defeat a motion for

summary judgment, the nonmoving party must come forward with affidavits or other similar

evidence to show that a genuine issue of material fact exists.  *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## ANALYSIS

Clontech's motion involves three questions: 1) whether Invitrogen is estopped from asserting its claims for infringement of the patents-in-suit; 2) whether the patents-in-suit are unenforceable due to patent misuse; and 3) whether Clontech is a willful infringer as a matter of law.  The Court will address each of these questions in turn.

**A.  Estoppel**

Clontech argues that Invitrogen is equitably, judicially, and collaterally estopped from asserting its claims for infringement of the patents-in-suit.

**1.  Equitable Estoppel**

Equitable estoppel will bar the enforcement of a patent when three elements are established: 1) the patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; 2) the alleged infringer relies upon that conduct; and 3) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.  *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (*en banc*).  The determination of whether equitable estoppel applies is within the "sound discretion of the trial court."  *Id*.  It is undisputed that Invitrogen acquiesced in this Court's application of collateral estoppel to the Delaware findings, and

consented to the entry of a final judgment that contemplated the adoption of the Delaware findings. However, the Court does not believe that Invitrogen did so with the intent to mislead Clontech or the Court. Therefore, the Court will not apply equitable estoppel in this case.

### 2.  Judicial Estoppel

Judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation. *See Transclean Corp. v. Jiffy Lube Intern., Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007). Three elements must be satisfied in order for a court to apply judicial estoppel: 1) the party sought to be estopped must be seeking to adopt a position of fact that is inconsistent with a prior stance; 2) the prior inconsistent position must have been accepted by the court; and 3) the party sought to be estopped must have intentionally misled the court to gain unfair advantage.  *Timothy Zinkland v. Timothy S. Brown, et. al.*, No. 05-2170, slip op. at 7 (4th Cir. March 1, 2007) (Traxler, J.) (internal quotations and citations omitted).  The "bad faith requirement is the 'determinative factor.'" *Id.* (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)).  The Court does not believe that the bad faith element is met here, and "[w]ithout bad faith, there can be no judicial estoppel." *Zinkland*, No. 05-2170, slip op. at 7.

### 3.  Collateral Estoppel

Clontech's strongest argument is that Invitrogen is collaterally estopped from litigating the issue of whether the patents-in-suit cover the SuperScript™ and SuperScript™ II products.  The resolution of this issue centers primarily around this Court's November 10, 2003 Order affording collateral estoppel effect to the Delaware findings.  The parties disagree as to validity of the Court's Order, and, pursuant to the Court's direction at the March 14, 2007 Status Conference, have separately briefed the Court on the impact of the CAFC's recent decisions on this Court's November 10, 2003 Order.

At the outset, the Court must note that the application of collateral estoppel was indeed proper at that time.  In order for a decision or findings of another court to be given collateral estoppel or issue preclusion effect, the decision or findings must be "final."  There is no dispute that Judge Robinson's judgment in the Delaware case was a final judgment on the merits.  Therefore, it was proper at that time for this Court to grant collateral estoppel effect to Judge Robinson's factual findings.  The fact that Invitrogen was then appealing Judge Robinson's Order is of no consequence. "The established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal."  *Warwick Corporation v. Maryland Dept. of Transportation, et al.*, 573 F. Supp. 1011, 1014 (D. Md. 1983) (citing Wright & Miller, *Federal Practice and Procedure*, § 4433 at 308 (1981)).

However, Invitrogen maintains that the November 10, 2003 Order was entered after the Court lost jurisdiction over this case, and therefore, the Order has no force or effect.  In support of this argument, Invitrogen cites two leading Fourth Circuit decisions on the issue.  *See Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001) ("Generally, the filing of a notice of appeal immediately transfers jurisdiction of all matters relating to the appeal from the district court to the court of appeals."); *In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1190 (4th Cir. 1991) (same). Although Invitrogen highlights the general rule, Invitrogen downplays the fact that "a district court does not lose jurisdiction to proceed as to matters in aid of the appeal."  *In re Grand Jury*, 947 F.2d at 1190.  This exception belies Invitrogen's entire argument because the November 10, 2003 Order did nothing more than clear up the record for appeal.

Invitrogen filed its Notice of Appeal in this case on October 7, 2003 (Paper No. 860).  At the Pre-trial Conference and Motions Hearing on September 15, 2003, the Court made its ruling on the collateral estoppel issue and Invitrogen clearly understood that the ruling had been made.  Counsel

for Invitrogen announced at the pretrial conference that if the Court were to adopt all of the Special Master's recommendations with respect to the collateral estoppel issue, Invitrogen felt it would have to consent to entry of a final judgment and immediately appeal the Court's judgment. *See* Tr. of Pre-Trial Conference and Motions Hr'g 17:4-15, Sept. 15, 2003. A few minutes later, Invitrogen's counsel stated that "infringement of those two ['797 and '005] patents is no longer in issue in this case. It's been dropped out of the case as a result of the collateral estoppel ruling." Hr'g Tr. 28:19-29:1. Two days later, on September 17, 2003, Invitrogen filed its consent to entry of the Final Judgment. Therefore, the record is clear that not only did the Court make its ruling at the September 15 hearing, but Invitrogen accepted that ruling and strategically consented to a final judgment in order to appeal that ruling. The aspects of the November 10, 2003 Order relating to collateral estoppel simply memorialized the oral rulings made at the Pre-trial Conference and Motions hearing well before Invitrogen filed its Notice of Appeal. Under Fourth Circuit law, it was certainly within the jurisdiction of this Court to memorialize its previous oral ruling by written Order.

Clontech argues that since the Court had jurisdiction to enter the November 10, 2003 Order, Invitrogen effectively waived any objection to the application of collateral estoppel by failing to raise its objection on appeal. In its Memorandum in Opposition to Clontech's Motion for Summary Judgment, Invitrogen argues that "[b]ecause the November 10, 2003 Order was not part of the record when Invitrogen filed its Notice of Appeal, Invitrogen obviously did not and could not have appealed from that Order." Mem. in Opp. to Mot. for Summ. J. at 3 n.2. In light of the procedural record of this case, Invitrogen's argument is disingenuous at best. Invitrogen not only withdrew its opposition to Clontech's request for collateral estoppel before it filed its Notice of Appeal, but Invitrogen also recognized that the Court had afforded collateral estoppel effect to the Delaware findings at least as of the date of the Pre-trial Conference and Motions Hearing on September 15,

2003.

Furthermore, although Invitrogen claims that it could not have appealed from an Order entered after the October 7, 2003 filing of its Notice Appeal, the record in this case reflects that Invitrogen did exactly what it claims it could not have done.  In its Memorandum Regarding the Impact of the Federal Circuit's Decisions on this Court's November 10, 2003 Order, Invitrogen asserts that "[p]rior to the most recent appeal in this action, this Court entered a stipulated judgment–since reversed–holding the patents-in-suit invalid as anticipated by the work of Goff. (D.I. 868, 852)."[1]  Mem. at 1.  A review of the docket sheet in this case reveals that Paper No. 868 was entered by this Court on October 17, 2003, ten days after Invitrogen filed its Notice of Appeal.  To be sure, the introduction to the CAFC's opinion in the appeal of this case reads:

> Invitrogen appeals from the judgment of the United States District Court for the District of Maryland, invalidating two hundred and twenty-one claims, in three related Invitrogen patents, as anticipated by § 102(g)(2) prior art.  *Invitrogen Corp. v. Clontech Labs., Inc.*, Nos. AW-96-4080, AW-00-1879 (D. Md. October 17, 2003) (final judgment).

*Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1057 (Fed. Cir. 2005).  Therefore, it is difficult for the Court to square Invitrogen's argument that it could not have appealed an Order entered after the October 7, 2003 filing of the Notice of Appeal with the fact that the Order Invitrogen appealed was entered by this Court on October 17, 2003.  This, coupled with the fact that this Court had made its ruling with respect to the collateral estoppel issue well before October 7, leads the Court to conclude that Invitrogen has waived its right to object to this Court's grant of

---

[1] Invitrogen mischaracterizes the CAFC's disposition of the appeal in this case.  The CAFC did not reverse this Court's Order.  Rather, the CAFC affirmed all but this Court's judgment of invalidity based upon anticipation.  With respect to the invalidity judgment, rather than reversing this Court's judgment, the CAFC simply vacated the judgment and remanded the issue back to this Court to determine if the alleged prior inventors sufficiently appreciated the invention in order to constitute prior conception.  *See Invitrogen Corporation v. Clontech Laboratories, Inc.*, 429 F.3d 1052, 1057 (Fed. Cir. 2005).

collateral estoppel.

The Court agrees with Invitrogen, though, that in light of the CAFC's reversal of Judge Robinson's decision in Delaware, that decision can no longer be given preclusive effect. *See Levine v. McLeskey*, 164 F.3d 210, 213 (4th Cir. 1998) ("[I]f the appellate court terminates the case by final rulings as to some matters that leave it unnecessary to resolve other matters, preclusion is limited to the matters actually resolved by the appellate court." (quoting 18 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 4432, at 302)).    However, that is not the situation presently facing the Court.  Here, the Delaware Court entered a final judgment.  Invitrogen, understandably dissatisfied with the Delaware judgment, properly appealed that judgment to the CAFC.  Meanwhile, this Court properly entered an Order affording collateral estoppel effect to the then valid Delaware findings.    Although Invitrogen contends that it has contested the Delaware findings all along, Invitrogen acquiesced in this Court's Order affording collateral estoppel effect to the Delaware findings, consented to a final judgment that contemplated and incorporated those factual findings, and then appealed this Court's judgment, neglecting to raise the collateral estoppel issue on appeal.


The question here is not whether this Court should prospectively apply collateral estoppel to a judgment that has been compromised on appeal.  That would be the question if Invitrogen was correct in its assertion that this Court did not have jurisdiction to enter its November 10, 2003 Order *and* the Court did not grant Clontech's collateral estoppel request prior to Invitrogen's appeal in this case.  However, the Court has flatly rejected Invitrogen's jurisdictional argument and the record is clear that the Court had ruled on the collateral estoppel issue well before Invitrogen's Notice of Appeal was filed.  Therefore, the question here is not the prospective application of collateral estoppel, but whether this Court should excuse Invitrogen's failure to raise its objection to the grant

of collateral estoppel on appeal.[2]  Not allowing Invitrogen to challenge the collateral estoppel issue admittedly causes some tension with the fact that this Court could not now apply collateral estoppel to the Delaware judgment. However, vacating the application of collateral estoppel at this stage of the litigation will effectively overturn a ruling of this Court that was properly entered and not appealed more than three years ago. With less than three weeks left to the commencement of trial in this case, the Court believes that it is entirely too late for Invitrogen to revive a claim that was put to rest more than three years ago.  Guiding the Court's discretion are two important factors: 1) the substance of the CAFC's opinion in the Delaware appeal; and 2) Invitrogen's strategic decisions throughout the course of this litigation.

Although the parties have different interpretations of the effect of the CAFC's opinion in the Delaware appeal, the CAFC expressly did not address and offered no opinion as to whether Invitrogen's products were in fact covered by the patents-in-suit.  *See Clontech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1358 (Fed. Cir. 2005).  While the CAFC's decision not to address the patent coverage issue strips the prior Delaware judgment of its preclusive effect going forward, the Court does not believe the same standard should be applied retroactively.  Because the Court had already adopted the Delaware findings and issued a final judgment well over a year before the Delaware appeal was finally resolved, the absence of a discussion on the issue of whether the products were in fact covered by the patents-in-suit does not give this Court sufficient reason to disturb a settled and properly entered ruling.

Furthermore, Invitrogen's strategy with respect to the collateral estoppel issue convinces the Court that Invitrogen's failure to appeal the collateral estoppel ruling should not, at this stage in the

---

[2] Invitrogen has not cited nor has the Court found any case that stands for the proposition that this Court is required to revisit and vacate a previous order affording collateral estoppel effect to a final judgment that was subsequently disturbed on appeal.

litigation, be excused.  When Clontech asked this Court to afford collateral estoppel effect to the Delaware findings, Invitrogen initially opposed the request.   Later, Invitrogen withdrew its opposition, advised the Court that in light of the application of collateral estoppel there were no infringement issues left for trial, then consented to a final judgment in this case.  Invitrogen appealed that final judgment, but did not appeal this Court's underlying collateral estoppel ruling.   If Invitrogen objected to the application of collateral estoppel effect to the Delaware findings, the proper place to note that objection was before the CAFC in the appeal of this case.  However, Invitrogen neglected to appeal the collateral estoppel ruling in this case, and decided rather to rely on the opinion in the appeal of another court's order to somehow overturn a final judgment in this case.  The failure to appeal the collateral estoppel ruling constitutes a waiver of any objection to this Court's rulings.  As such, the Court will not vacate its previous Orders affording collateral estoppel effect to the Delaware findings.

The Court's November 10, 2003 Order also made several rulings with respect to enablement and the written description of the patents-in-suit.  Clontech now asks the Court to revise its November 10, 2003 Order to allow Clontech to present evidence of Invitrogen's failure to disclose the best mode with respect to the '608 patent in light of the CAFC's determination that the claims of the '608 patent, as opposed to those of the '797 and '005 patents, may be broad enough to cover Invitrogen's products.  The Court does not read the CAFC's opinion to suggest that the scope of the '608 patent is equal to, greater than, or less than the '797 and '005 patents.  The CAFC simply agreed with this Court's construction of the claims in the '608 patent and did not reach the issue of the relative scope of those claims.  In fact, the question of whether Invitrogen's products were in fact covered by the patents-in-suit was not put before the CAFC in the appeal of this case.  To go back now and review the scope of the '608 patent and allow Clontech to revive a best mode defense

would require the same type of retroactive inspection that Clontech urges the Court not to engage in with respect to Invitrogen's collateral estoppel arguments.

Consistent with the Court's refusal to vacate its collateral estoppel ruling now after the parties have had an opportunity to appeal the final judgment in this case, the Court will likewise deny any requests to relitigate issues of enablement and written description. Clontech appealed this Court's rulings that the patents-in-suit were enabled and satisfied the written description requirement of 35 U.S.C. § 112. The CAFC affirmed this Court's rulings. *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1081 (Fed. Cir. 2005). Any arguments or objections relating to enablement or written description should have been put before the CAFC during the pendency of Clontech's appeal. Clontech's failure to do so constitutes a waiver of those arguments. Therefore, all issues relating to enablement and written description of the patents-in-suit are deemed resolved.

## B.  Patent Unenforceability

Clontech has also moved the Court for summary judgment that all three patents-in-suit are and have been unenforceable from at least as early as May 17, 1999 up to the present date pursuant to the doctrine of unclean hands because of Invitrogen's misuse by false marking of cDNA library products with the patent numbers, which misuse has not been purged, as required by the law. Further, Clontech claims that the '797 patent has been unenforceable from at least as early as June 9, 1994 up to the present date and the '005 patent has been unenforceable from at least September 16, 1997 up to the present date pursuant to the doctrine of unclean hands because of Invitrogen's misuse by assertion of these patents with respect to Clontech's use and resale of Invitrogen's SuperScript™ and SuperScript™ II., which this Court has found are not covered by those patents, and Invitrogen's use restrictions relating to those patents and products, which misuse is continuing and has not been purged.

13

Invitrogen argues that: 1) Clontech should not be allowed to assert an unpleaded defense at this late stage in the litigation; 2) to the extent the Court allows Clontech to pursue the misuse defense, Clontech has failed to show misuse as a matter of law; and 3) genuine issues of material fact exist as to whether any mismarking was purged, thus precluding the grant of summary judgment.  In its Reply Memorandum, Clontech concedes that Invitrogen has raised a genuine issue of material fact concerning whether any misuse has been purged.  *See* Reply Mem. in Support of Mot. for Summ. J. at 5.  Therefore summary judgment would not be appropriate on the issue of patent unenforceability.  Since the question of patent unenforceability is an equitable issue, Clontech asks the Court to order a separate bench trial on the issue after the jury trial.  The Court will deny Clontech's request because the Court agrees with Invitrogen that Clontech's misuse defense is untimely.  This case has been pending for more than 10 years, with satellite litigation in Delaware and several appeals before the CAFC.  The Court has prevented Invitrogen from reviving its infringement claims and will likewise halt Clontech's belated attempt to assert a new defense in this litigation.

## C.  Willfulness

This Court has found, and the CAFC has affirmed, that Clontech literally infringed the '608 patent through the use of Clontech's PowerScript™ enzyme.  *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1081 (Fed. Cir. 2005).  Clontech has moved the Court for summary judgment that Clontech is not a willful infringer.  To prevail on its willfulness claim, Invitrogen must show that Clontech had no reasonable basis for reaching a good faith conclusion that the patent was invalid or unenforceable, or that Clontech's manufacture, use, or sale of its products avoided infringement of the '608 patent.  Willfulness is based upon the principle that once a defendant "has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine

whether or not he is infringing." *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389 (Fed. Cir 1983). The question of willfulness involves "consideration of the totality of circumstances." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1342-43 (Fed. Cir. 2004). The Court agrees with Invitrogen that the determination of willfulness necessarily involves questions of intent and the weighing of credibility of witnesses. *See Liquid Dynamics Corp. v. Vaughan Company, Inc.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (willfulness is an "intent-implicating question"). Therefore, the Court is obviously hesitant to make a willfulness determination on the pleadings and papers alone.

Furthermore, Invitrogen has alleged facts that would make the grant of summary judgment on the willfulness issue improper. Particularly, Invitrogen alleges that Clontech became aware of the '608 patent shortly after it issued in May 2000. Although Clontech received an opinion of counsel as to the '608 patent, that opinion expressly declined to address the four claims this Court found were literally infringed by Clontech's product. Therefore, Invitrogen claims, the patent opinion did not provide Clontech with a good-faith basis to continue its infringing conduct. In addition, Invitrogen alleges that Clontech continued its commercial use of the infringing product after this Court found infringement of the '608 patent and even after the CAFC affirmed that ruling.[3] Taken these facts in the light most favorable to Invitrogen, as this Court must on the instant motion for summary judgment, the Court finds that genuine issues of material fact exist and that Clontech is not entitled to a finding that it is not a willful infringer as a matter of law. Therefore, the motion for summary judgment as to willfulness will be denied.

As an alternative, Clontech requests a separate bench trial on the question of willfulness.

---

[3] Since the '797 and '005 patents have been removed from this litigation, the question of willfulness only pertains to the '608 patent.

The CAFC has held that a patentee has right to trial by jury on a claim of willfulness.  *Nat'l Presto Indus., Inc. v. West Bend Company*, 76 F.3d 1185, 1192-93 (Fed. Cir. 1996).  Although this Court will ultimately decide whether and how much to increase damages in the event that willfulness is established, the Court sees no reason to take the willfulness determination away from the jury at this time.  Therefore, Clontech's request for a separate bench trial on willfulness will be denied.

## <u>CONCLUSION</u>

For the reasons stated above, the Court grants-in-part, denies-in-part Clontech's Motion for Partial Summary Judgment (Paper No. 912).  An separate Order consistent with this Memorandum Opinion will follow.


Date:   <u>April 13, 2007</u>                          <u>            /s/            </u>
                                                        Alexander Williams, Jr.
                                                        United States District Judge