## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| **INVITROGEN CORPORATION** (formerly Life Technologies, Inc.), Plaintiff/Declaratory-Defendant, vs. **CLONTECH LABORATORIES, INC.,** Defendant/Declaratory-Plaintiff. | **Civil Action No.  AW-96-4080** **AW-00-1879** |

### MEMORANDUM OPINION

This case has a long history before the Court.  After over ten years of litigation in this Court, including two appeals to the United States Court of Appeals for Federal Circuit ("CAFC"), the case was finally in a posture to be put before a jury.  As a result of the latest remand from the CAFC and this Court's April 13, 2007 grant-in-part, denial-in-part of Clontech's subsequent Motion for Partial Summary Judgment, the Court informed the parties that the only issues remaining to be tried were the issue of willful infringement of the '608 patent and Clontech's two invalidity defenses of prior invention and obviousness (Paper No. 935).  Both parties moved to reconsider the Court's Order. The Court denied Clontech's Motion (Paper No. 969).

At a pre-trial and motions hearing on May 7, 2007, the Court denied Invitrogen's Motion for Reconsideration insomuch as the Motion asked the Court to permit Invitrogen to pursue infringement claims under the '797 and '005 patents.  The Court noted, however, that it had reservations about the continued application of collateral estoppel to the Delaware determination of non-coverage in light of arguments raised in Invitrogen's Motion pursuant to Rule 60(b)(5).  The primary affect the Delaware findings have in this case is on the issue of damages.  Consequently, the Court bifurcated the trial on willfulness and invalidity from the question of damages.  Trial on willfulness and the two invalidity defenses began on May 8, 2007.  On May 16, 2007, the jury

1

returned a verdict of willful infringement and rejected Clontech's invalidity defenses based on prior invention and obviousness. Currently before the Court are the parties' respective Rule 50 Motions (and Renewed Motions) for Judgment as a Matter of Law ("JMOL"), and the Rule 60(b)(5) aspect of Invitrogen's Motion for Reconsideration (Paper No. 942).

## Invitrogen's Rule 50 Motion on Invalidity

At the close of Clontech's case-in-chief on invalidity, Invitrogen moved the Court for a JMOL that the '608 patent is not invalid for prior invention or obviousness. The Court reserved on the Motion and allowed the issue of invalidity to be considered by the jury. Because the Court believes the jury had legally sufficient evidence to support a finding of invalidity, Invitrogen's Rule 50 Motion must be denied.[1]

## Clontech's Rule 50 Motion on Willfulness

Clontech moved for a JMOL of non-willfulness at the close of Invitrogen's case-in-chief, and renewed the Motion after the jury returned a verdict of willfulness (Paper No. 1020). The issue of willful infringement is a difficult and evolving area of patent law. *See generally In re Seagate Technology, LLC*, 2007 WL 196403 (Fed. Cir. Jan 26, 2007); *In re EchoStar Commc'n Corp.*, 448 F.3d 1294 (Fed. Cir. 2006); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004); *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380 (Fed. Cir. 1983). However, on the facts presented in this case, the Court cannot and will not set aside the jury's finding of willfulness.

The Court may grant a JMOL "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). In making this determination, the Court must

---

[1] Of course, Invitrogen's Motion is also mooted by the fact that the jury ultimately returned a verdict rejecting Clontech's invalidity defenses.

"view the evidence . . . in the light most favorable to . . . the nonmovant, 'drawing all reasonable inferences in [the nonmovant's] favor without weighing the evidence or assessing the witnesses' credibility.'" *Ocheltree v. Scollon Prods.*, 335 F.3d 325, 331 (4th Cir. 2003) (quoting *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 457 (4th Cir. 2002)).[2] "Judgment as a matter of law is proper only if 'there can be but one reasonable conclusion as to the verdict.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[I]f reasonable minds can differ" as to the verdict, then this Court must uphold the jury's verdict. *See Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004).

Once a party has actual notice of another's patent rights, the party "has an affirmative duty to exercise due care to determine whether or not he is infringing." *Knorr-Bremse*, 383 F.3d at 1343. Although *Knorr-Bremse* removed the adverse inference that flowed from the failure to obtain or disclose an exculpatory opinion of patent counsel in defense of a willfulness charge, *Knorr-Bremse* affirmed the underlying duty of care. *See Imonex Services v. W. H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005). The willfulness question is determined by review of the totality of circumstances. *Knorr-Bremse*, 383 F.3d at 1342. Under the totality of circumstances analysis, an important factor is whether or not the infringer "investigated the scope of the patent and formed a good-faith belief that it was invalid." *Imonex*, 408 F.3d at 1377. Other factors to be considered include deliberate copying on the part of the infringer and the duration of the infringer's conduct. *See Read v. Portec*, 970 F.2d 816, 826 (Fed. Cir. 1992).

At trial, Invitrogen argued that once Clontech became aware of the '608 patent, it's conduct

---

[2] In considering a JMOL motion, this Court is bound by Fourth Circuit precedent. *See Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004) ("The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie.").

to avoid infringing the patent was unreasonable.  Particularly, Invitrogen put on evidence that Clontech developed its PowerScript product as a copycat of Invitrogen's SuperScript products.[3] Once the '608 patent issued in May 2000 and the CAFC held the related patents enforceable, Clontech continued the sale of its PowerScript product.  Evidence of copying supports a finding of willfulness.  *See Read*, 970 F.2d at 826; *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006).

In addition, Invitrogen argued that Clontech continued to infringe the '608 patent even after this Court had found infringement and that ruling was affirmed on appeal.  In affirming this Court's finding of infringement, the CAFC also vacated this Court's determination that the patent was invalid.  Under the totality of circumstances, a reasonable jury could conclude that continued infringement is evidence of willfulness.

Finally, Invitrogen argued that it was unreasonable for Clontech not to seek advice of patent counsel with respect to its potentially infringing conduct.  The parties hotly debated the import of a patent opinion, and more specifically, the failure to obtain a patent opinion in the wake of the *Knorr-Bremse* decision.  Invitrogen argued that while *Knorr-Bremse* precludes the Court from instructing the jury *to* draw an adverse inference from the failure to obtain a patent opinion, the decision does not require the Court to instruct the jury *not to* draw such an inference.  Clontech argued that since *Knorr-Bremse* removed the adverse inference, Invitrogen should not be allowed to conjure such an inference in the jury's minds through attorney argument.

After *Knorr-Bremse*, the CAFC has noted that an infringer's "[g]ood faith may normally be shown by obtaining the advice of legal counsel as to infringement or patent validity."  *Liquid Dynamics*, 449 F.3d at 1225.  However, there is no clear indication with regards to the legal effect

---

[3] The question of whether Invitrogen's SuperScript products are in fact covered by the '608 patent has yet to be determined by this Court.

of not obtaining opinion of counsel. This Court concluded that the failure to obtain a patent opinion was certainly relevant to the totality of circumstances analysis, but in an effort to avoid running afoul the *Knorr-Bremse* mandate, the Court granted Clontech's curative instruction and instructed the jury not to draw an adverse inference from Clontech's failure to obtain a patent opinion.[4] Even in light of the curative instruction, the jury still returned a verdict of willfulness.

Clontech relies primarily on the filing of the instant declaratory judgment action and rulings of the various courts in this case as evidence of good faith. Although Clontech has put on some evidence of good faith, this does not negate the fact that Invitrogen has put on significant evidence upon which a reasonable jury could infer willfulness. "The drawing of inferences, particularly in respect of an intent-implicating question such as willfulness, is peculiarly within the province of the fact finder that observed the witnesses." *Id.* Since reasonable minds could differ on the question of willfulness based on the evidence presented at trial, it would be improper for this Court to disturb the jury's verdict. Therefore, Clontech's JMOL and renewed JMOL motions must be denied.[5]

**Invitrogen's Rule 60(b)(5) Motion**

As the Court noted in its April 30, 2007 Memorandum Opinion, Invitrogen's Rule 60 Motion raised important questions for the Court with respect to the continued application of the Delaware factual findings. In its April 13, 2007 Memorandum Opinion and Order, the Court granted-in-part Clontech's motion for partial summary that Invitrogen is estopped from pursuing infringement claims under the '797 and '005 patents. The Court's reasoning for barring Invitrogen's infringement

---

[4] The Court notes here that the curative instruction was given to the jury immediately following closing argument by Invitrogen's counsel.

[5] Although the jury has found willfulness, "a finding of willful infringement merely authorizes, but does not mandate, an award of increased damages." *Juicy Whip v. Orange Bang*, 382 F.3d 1367, 1373 (Fed. Cir. 2004). The Court will ultimately have to consider the *Read* factors in making its own independent and discretionary determination as to whether enhanced damages are warranted in this case.

claims are adequately set forth in the Court's Memorandum Opinion and will not be repeated here.[6]

Separate from the question of whether Invitrogen could move forward with its infringement claims

(and Clontech with its defenses), is the question of how this Court is to now treat the Delaware

factual findings as it pertains to the damages portion of this case.  The Court must make clear that

it is not interested in whether the '608 patent covers Invitrogen's SuperScript products for any other

reason but to determine whether this case is a lost profits case or a royalties case.  If the products

are not covered by the '608 patent, as the Delaware Court found, then the SuperScript products

would be non-infringing alternatives, making this is a royalties case.  If the products are covered,

then Invitrogen is entitled to lost profits.

Clontech argues that the Delaware findings are the law of this case, since Invitrogen did not

appeal this Court's grant of collateral estoppel to the Delaware findings. Clontech's argument cannot

prevail because although the CAFC expressly did not address the patent coverage issue, it is not

clear what effect the CAFC's reversal of the Delaware decision has on the continued viability of

those findings. *See Clontech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1358 (Fed. Cir.

2005).   Based on that reversal, this Court is unable to conclude that as a matter of law the

SuperScript products fall or do not fall within the claims of the '608 patent.  Therefore, to hold

Invitrogen to the Delaware court's factual findings without an independent determination by this

Court is a somewhat harsh result.  On the other hand, Invitrogen argues that the SuperScript products

are covered by the '608 patent because the Delaware opinion was reversed.  Invitrogen contends that

---

[6] After the jury verdict of affirming the validity of the '608 patent, Clontech informed the
Court that it now wishes to pursue a best mode invalidity defense.  Clontech's request to put on
another defense at this late stage will not be granted.  In its April 16, 2007 letter to the Court
(Paper No. 938), Clontech agreed that the only issues for trial were the issue of willfulness and
its two invalidity defenses.  Both parties have sustained substantial adverse rulings in this case as
a result of the issue with the Delaware findings.  Specifically, Invitrogen has been precluded
from pursuing infringement claims on two of its patents.  Likewise, Clontech has been precluded
from arguing its non-enablement and best mode theories.  The Court's rulings with respect to
those issues will not be reconsidered.

the reversal of the Delaware decision necessarily reverses the finding of non-coverage. This argument is unsustainable. The parties fail to highlight the fact that the Delaware appeal was a case of first impression at before the CAFC. *Id.* at 1352. The case presented the CAFC with its first opportunity to interpret the Patent Act's false marking statute, 35 U.S.C. § 292(a). Because false marking involves a mental element and the CAFC determined that the Delaware district court's finding with respect to that mental element was erroneous, the CAFC never reached the issue of patent coverage. Therefore, Invitrogen's interpretation that the false marking decision necessarily addresses the coverage issue is simply not correct.

Because the patent coverage issue is so critical to the proper resolution of this case, the Court thinks it best to independently determine whether Invitrogen's SuperScript products are covered by the '608 patent. The jury will make that determination before being presented with evidence of damages. Insofar as Invitrogen's Rule 60(b)(5) Motion seeks relief from the continued application of the Delaware court's finding of non-coverage, the Motion will be granted.

## CONCLUSION

For the reasons stated above, the Court denies Invitrogen's oral Motion for Judgment as a Matter of Law, denies Clontech's oral Motion for Judgment as a Matter of Law and written Renewed Motion for Judgment as a Matter of Law (Paper No. 1020), and denies-in-part, grants-in-part Invitrogen's Motion for Reconsideration (Paper No. 942). A separate Order consistent with this Memorandum Opinion will follow.

Date:  <u>May 21, 2007</u>                                    <u>            /s/            </u>
                                                              Alexander Williams, Jr.
                                                              United States District Judge